3-15-08-07 to be called to the State Appellate Defender's Office by Ms. Deacon Morales v. D'Amico Brickhouse on behalf of Yasmin Nabai Good afternoon, Your Honors. Good afternoon, Counsel. May it please the Court. My name is Yasmin Nabai. I represent D'Amico Brickhouse on behalf of the State Appellate Defender. In a prior appeal, Your Honors remanded for second-stage post-conviction proceedings. The current appeal concerns the third-stage denial of D'Amico's post-conviction petition alleging ineffective assistance of trial counsel for failing to seek suppression of statements he made following an unambiguous request for counsel pursuant to Edwards v. Arizona. On July 1, 2008, shortly after the armed robbery for which D'Amico was convicted, he was brought into the police station by Sergeant Chrysler and his partner, taken into an interrogation room for the sole purpose of arresting him and videotaping his statement. Before Sergeant Chrysler had even gotten D'Amico to agree to give a statement at all, D'Amico invoked his right to counsel. He said, I can't ask for a lawyer. As I noted, in a previous decision, this Court found that that statement could constitute an unambiguous request for counsel. Nothing at the evidentiary hearing which subsequently ensued proved otherwise. There are several factors which bear this out to be true. First, we must remember that the Fifth Amendment involves the invocation, requires the defendant to invoke the right to counsel, not demand. So a question such as, I can't ask for a lawyer, can be an unambiguous request for counsel. In this case, D'Amico had requested counsel 30 seconds before the Miranda warnings had been issued. This in and of itself refutes the notion that he was seeking clarification of his rights. Rather, there are only two possible interpretations. I just said, I can't have a lawyer. He didn't, I can't ask for a lawyer. I can't have a lawyer? I can't have a lawyer. Correct. And then the Chrysler says to him, hey, we're going to get to that. And then they read him these warnings and which clearly is a right to a lawyer. But then he still signs it, correct? Yes, I think there's a couple of points that need to be said on that. It's interesting to note that D'Amico, about 30 seconds after saying, can I have a lawyer present? Can I? Can I? I can't have a lawyer. I'm sorry. About 30 seconds after that, after he's given his Miranda, right about before he's given his Miranda warnings, he says, I'm innocent. Why are you reading my Miranda rights? And it's at that point, and I think that's very notable, that Chrysler, Sergeant Chrysler turns to him and said, well, you just asked, can you have your lawyer present? Not only does that suggest that Sergeant Chrysler took it as an invocation of the right to counsel, but more to your point, it had a chilling effect. Because here is D'Amico asking, I can't ask for a lawyer, and then the sergeant is using that against him. And is saying, basically insinuating that he is guilty because he's requesting counsel. So not only is he... That's a big legal phase, isn't it? That last phase. No, I don't think it is. I think it's a very natural progression. He's saying, so D'Amico says, I'm innocent. Why are you reading me my Miranda rights? It is at that point that the officer says, well, you just said, can you have your lawyer present? It's understandable why an individual would think that he's suggesting that by invoking counsel, he is guilty. It's understandable why the defendant did not invoke counsel again. Also notable is that D'Amico doesn't tell him, no, I don't want an attorney present. He never says that. And it's also finally... Well, he agreed to waive the rights and talk to the police, which he did. Well, he agreed to talk to the police after his request for counsel is not being honored. And actually, that's interesting because the sergeant Chrysler is kind of frustrating his, the reading of the Miranda rights or his request by saying, oh, we'll get to that, we'll get to that. So that's problematic in and of itself. Turning back to the interpretation of the statement as can you have your lawyer present, that's pretty interesting because case law within this court and the Seventh Circuit have found similar questions to constitute an unambiguous request for counsel. Just for point of clarification, this court didn't find that it was ambiguous. It was only, what was found was that in the context of first stage post-conviction petition, viewing everything that the defendant had in his petition as true and understanding that circumstances were also, would also play into the determination just that it was possible. Correct, Your Honor. And if I misspoke, I apologize. I did say it could constitute a request for counsel. But it is nevertheless true that nothing that developed at the motion to dismiss hearing or at the evidentiary hearing called into doubt the notion that it was in fact an unambiguous request for counsel. And, but I do want to caution against looking towards the post-invocation conduct. Smith v. Illinois, a United States Supreme Court decision makes clear that we do not look at post-invocation conduct. But it is notable in this case, even if one were to ignore controlling Supreme Court precedent, that there's a readily explainable reason that D'Amico did not re-invoke, not only as he testified at the evidentiary hearing that it was futile, but worse yet, that Sergeant Chrysler suggested that it might imply that he was guilty somehow. This decision was not sound strategy. And before I get into that, I want to back up and say the State focuses largely on the videotape statements. And in fact, this is what they did at the evidentiary hearing as well. But we have three separate statements here, all three of which, because they preceded an unambiguous request for counsel and were not initiated by D'Amico, would be subject to suppression under Edwards. At the evidentiary hearing, counsel was asked a number of leading questions by the prosecutor regarding the merits of the videotaped interrogation and its allegedly exculpatory nature. She repeatedly testified that she had no recollection of events. However, at a post-trial Krankel hearing where the issue was briefly broached, she made clear that her decision was in fact not sound strategy, but based on a misapprehension of the law. At that time, she indicated her belief that the oral statements were voluntary and that they could not be challenged because they were not written and D'Amico had disavowed them. Of course, all of these three reasons do not prevent counsel from raising an Edwards suppression motion, challenging the oral statements alone based on Edwards v. Arizona. And this is another point that is notable, is that counsel could have still waived any objections to the oral statements following a successful post-trial ruling. The appellate court and people belittle, under similar circumstances, found counsel not to have made a sound strategic decision when, of course, there's nothing to lose by filing a pretrial suppression motion. Finally, your honors, D'Amico was prejudiced by the failure of counsel in this respect. The case rested largely on identification testimony, both of which were weak. The identification witnesses were Jeffrey and Rochelle Hicks. Jeffrey testified that he did not know D'Amico or did not know the offender beforehand, but recognized and said that he had braids in his hair. Of course, we know that D'Amico, who was picked up shortly after this offense, did not have his hair in braids, and there was no question that his hair was not in braids. There's also some suspicious motivations of Jeffrey's involvement in the crime. In fact, shortly after the incident, when Rochelle is driving around with Officer Chrysler looking for the perpetrator, he is seen with Curtis Phillips, an uncharged accomplice in this case. And, of course, he doesn't turn over his own money. He tells Rochelle to give her portion of the money over, which is suspicious itself. But Rochelle's identification suffers other problems. What's suspicious about that, then? She turns it over, and he gives it to her, and they hand it to her. He tells her to turn it over. They both had money. They both had a certain amount of money, and it shows that he had no... He's telling his wife to turn over that money. And, again, he is spotted with Curtis Phillips shortly thereafter, which independently... But even if you don't go there, Rochelle herself also has problems. She testifies... She has a cognitive disability for which she's getting Social Security benefits for. She then testifies at trial that the offender had a, quote, silver-caliber handgun, only to clarify that she doesn't even know what that phrase meant and was told that by her husband. Also, she indicates that she met D'Amico three years prior, which at post-trial hearings becomes known as being impossible. So we have those two weak identifications. Also, there are no proceeds found to this offense. We have no gun in this offense. The BB gun that's found in D'Amico's house is shown. A picture of that BB gun is shown to both Rochelle and to her husband, Jeffrey, and they both say that that is not the weapon that the offender used. The only item we have is a ubiquitous white socks cap. But if there's any other question, the jury itself telegraphed how prejudicial the impact of these statements were. They requested not only to see the videotape statements, but to receive the police reports detailing the oral statements which came in. And, of course, jury notes in and of itself suggest that the case was closely balanced and therefore not overwhelming. Finally, the state has no argument, has no contention or objection to D'Amico's request that if this case is remanded for a new trial, that it go before a different judge. They have forfeited the right to make that argument at a later time. So for all of the reasons advanced herein and by D'Amico in his briefs to this court, he respectfully asks that this court reverse the denial of his evidentiary hearing and remand for further proceeding for a new trial before a different judge. Thank you. Thank you, Counsel. Counsel? Good morning, Your Honors. Counsel? Good afternoon, Your Honors. Counsel? May I have a morning argument? May it please the Court. My name is Stephen Rogers, and I represent the people of the state of Illinois. Your Honors, I first want to put in perspective really what the overarching issue. Defendant is here to argue that appellate counsel on direct appeal was ineffective. For failing to argue that trial counsel was ineffective, for failure to file this motion to suppress statement. So we've ultimately wrapped up in a couple layers, but the underlying issue, of course, the initial underlying issue, is whether the defendant invoked his right to counsel. And the statement, I can't ask for a lawyer, especially in context, is not an unambiguous request for counsel. And the defense in reply cited Hunter, and I think Hunter provides a good example because there the defendant said, can you call my attorney? That seems to be more unambiguous. That's pretty direct. Can you call my attorney? The Court doesn't just say that's an unambiguous request. On page 946 of the opinion, it said it becomes particularly unambiguous when read in light of what had occurred previously. This statement was made only after he had been arrested, handcuffed to a hospital gurney, when he read his Miranda rights and asked if he wanted to speak to a police detective. At that point, he said, can you call multiple people? One of them being his attorney, who he named. The defendant voluntarily went to the police station with this officer. He was not arrested at the time, and it's unclear whether he knew what his status in the investigation was. The police had previously picked up his friend, Curtis Phillips, for an interview, and only upon coming back to Curtis' apartment, did they ask D'Amico if he would go to the police station with them for an interview. The officer had not given Miranda warnings, had not asked him a single question, as far as the record is concerned, about what his involvement in this crime was, and was simply in the midst of filling out a consent form for audio and video. So those were the circumstances. And I agree with counsel to some extent, because in Smith v. Illinois, they say, if you have an unambiguous request, the one way you can read it. You can't clarify later. But the statement, I can't ask for a lawyer, if you read it, it almost implies that he thinks he's not entitled to one at that point. But then 30 seconds later, the officer clarifies that in fact you are entitled, and he specifically says, have you read this fourth point, which is that if you cannot afford a lawyer, one will be appointed to you. So the statement itself is not unambiguous, and officers have no duty to stop questioning if there is an unambiguous request, or a request that might invoke counsel. And so if it's an unambiguous request, a motion to suppress would have been, or if it's ambiguous, the motion to suppress would have been futile, and trial counsel could not have been ineffective, and therefore appellate counsel could also not have been ineffective for arguing trial counsel's ineffectiveness. On the prejudice prong, even if this court were to get all the way to the last step, and say the statements would have been suppressed for some reason, the state's case was very strong. Within a minute or two of this robbery, Rochelle calls the police, calls 911, and says, I was just robbed by a man named D'Amico. She identifies and explains the clothing he's wearing, and says he's wearing a white socks hat. Jeffrey tells the same story. And I think the few things that defense counsel points out, they just don't undermine the state's, the overall portion of the state's case. Her learning disability, that alone does not undermine an individual's testimony. The fact that she said she knew D'Amico for approximately three years, when we learned post-trial that he had been incarcerated for the previous eight years, D'Amico, to anyone's impression, was not an important person in her life, but she knew him because he hung out with her uncle. In Jeffrey's testimony that the offender had braids in his hair, he clarified, the person was wearing a white sock hat. I thought I saw something sticking out. This is not something that would crucially undermine the state's case in any way. And then the middle issue is the trial strategy. And the video is very helpful for the defense. They really got no other avenue except to claim he was somewhere else, because you have three individuals putting him right near the scene of the robbery. You have two people that photo ID him within a couple hours, and providing the alibi was pretty much their only line of defense. And at the same time, trial counsel did meaningfully cross-examine the officers on their failure to get a written statement or videotape any of the second or third interviews. I think that covers the three points. If your honors don't have any further questions, I can thank you and ask you to affirm the trial court's decision. Counsel? Very briefly, just three couple points. Right off the bat, if the state is suggesting that D'Amico was not entitled to Miranda protections because he invoked his right to counsel 30 seconds before he's being Mirandized, I think that the case law just doesn't support it. He was facing an imminent interrogation. He was entitled to those protections pursuant to Miranda, pursuant to Edwards. He shouldn't be faulted for knowing his rights before they're given to him. Nor can he be faulted for re-invoking, as I said, he unambiguously invoked. He said, I can't ask for a lawyer. Sergeant Chrysler interpreted that as, can you ask for a lawyer? This court in Howerton and previously numerous cases in the Seventh Circuit, Lee, Hunter, have all interpreted that question to be, or permutations of that question, if you will, to be an unambiguous request for counsel. There's only two interpretations of the question, I can't ask for a lawyer. One is either he's asking to ask for a lawyer, or two, he is right out requesting a lawyer. By way of analogy, an individual who says, I can't have another piece of cheesecake before dinner, you wouldn't be asking that question unless you actually wanted another piece of cheesecake. In much the same way, just because D'Amico was being polite and asking, I can't ask for a lawyer, he shouldn't be faulted. It's still an unambiguous request for counsel. Again, the state agrees that we shouldn't look at post-invocation conduct, but in this case, we can readily understand why he didn't re-invoke. As far as, just to touch on Hunter, I think Hunter actually supports our position, because again, it is a very similar question. There are only two words that are really changed, I can't, can I. It's colloquial language of an offender who's being polite. There's no question that he's being interrogated. He's also arrested immediately after this exculpatory statement. If the purpose was really just to get a statement from him, you would expect that when he said, I didn't do this, that he wouldn't be arrested. But he is arrested regardless of what he said in that videotaped interrogation. Again, the state, as far as strategy, focuses on the video itself. Again, we're talking about two oral statements, which the defense counsel could have moved to suppress, independent of that videotaped statement. Again, they don't have a response to the point that defense counsel could have waived any objections to the videotaped statement if they felt, or to the oral statements, if they felt that the introduction of the videotaped statement was more beneficial than the harm from the oral statements. But, you know, a case, U.S. v. Weisinger, also talks about, kind of dispels a similar notion. It was the state who introduced the videotaped statement, which would cause us to think, is it really that exculpatory for them if the state introduced this evidence? As far as defense counsel's cross-examination, courts have repeatedly said that a trial counsel who does everything perfect may still be ineffective for this one mistake. Finally, as far as prejudice goes, I want to bring this court back to Lerma. People via Lerma from the Illinois Supreme Court reminded us that identification testimony is uniquely fallible. And that goes in the case of identifications of known offenders, or where the victim knows the offender, or where he doesn't. This state's case rested largely on that. And again, they don't dispute any of the inconsistencies that we've noted, or major inconsistencies. They just try and minimize the damage. But the jury has already told you how damaging the statements were, because they requested it multiple times. They requested not only the videotaped statement, but again, the reports. This is not an overwhelming evidence case. There are no further questions? Thank you. Thank you. The court will take this matter under advisement. And now we'll take a adjournment until tomorrow.